UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF LOUISIANA

IN RE:
**TODD T. JANNEY, SR.**                                              CASE NO. **14-11278**
**SHANON JANNEY**
    DEBTORS                                              CHAPTER 7

**REBECCA ADAMS**
**REBECCA ADAMS LLC**
    PLAINTIFFS

V.                                                                   ADV. NO. **15-1026**

**TODD T. JANNEY, SR.**
    DEFENDANT

## MEMORANDUM OPINION

After Todd Janney and his wife Shannon filed a joint chapter 7 petition, Rebecca Adams ("Adams") and her eponymous limited liability company, Rebecca Adams LLC ("Adams LLC"), an accounting firm whose sole member is Rebecca Adams, sued debtor Todd T. Janney, Sr. ("Janney") to prevent his discharge under 11 U.S.C. §727(A)(3) and (5), or alternatively, to except its debt from discharge under 11 U.S.C. §523(a)(2)(A).[1]  This opinion explains why Adams LLC failed to meet its burden of proof on all counts.

### FACTS

Rebecca Adams began her relationship with Janney and his solely owned businesses and clinics in 2001.  She performed accounting, tax, and administrative services for Janney and the same entities until 2008, when the limited liability company she'd formed contracted with the

---

[1] The court dismissed Rebecca Adams's individual claims before trial.  July 23, 2015 Order Dismissing Claims of Rebecca Adams (P-23).

Janney interests to render the same services. The October 24, 2008 contract[2] Todd Janney signed provides in part: "In consideration of services rendered, I agree: that an Open Account has been established on my behalf, and that I am liable for and hereby guarantee the payment of all charges incurred for my services…. Furthermore, I agree that payment is due in full within 30 days of tax return or work completion and/or billing, whichever occurs first."

A similar contract followed on February 20, 2013, adding Janney's mother as a party.[3] That contract recites in relevant part:

(1) "Services will be billed to The Client [sic] on a bi-monthly basis and will be due and payable upon receipt."

(2) "The Client(s) agrees to be personally responsible for all accounting costs and expenses incurred by The Client's business(es) and to personally bear guarantor responsibility for payment in full."

Both the 2008 and the 2013 contracts provided that unpaid balances would accrue interest.

## ANALYSIS

**I.    Janney is Personally Liable for his Entities' Debts to Adams**

Plaintiff introduced two contracts for Adams LLC's services to Janney and to his Physicians' Choice Physical Therapy Clinics. Janney signed both agreements, which unambiguously evidence Janney's intent to be responsible for paying his own and his companies' debts to Adams. When the words of a contract are clear and explicit and lead to no absurd

---

[2] The October 24, 2008 agreement between Adams LLC and the Janney interests is not a model of clarity but its context makes plain that Janney was a party to the agreement personally, signed on behalf of his companies, and also guarantied his companies' undertaking to Adams. [Plaintiff's exhibit #9.]

[3] February 20, 2013 contract [Plaintiff's exhibit #10, p. 2]. Adams testified that she insisted that Paulette Mohamed, Janney's mother, be a party to the 2013 contract because Janney had transferred two of his entities to her, which in Adams's opinion made Ms. Mohamed a partial owner of the clinics. (Testimony of Rebecca Adams, February 1, 2016, p. 18, lines 18-24.)

2

consequences, no further interpretation may be made in search of the parties' intent.[4] It is unnecessary to look beyond a written agreement for intent unless the agreement is unclear, ambiguous or will lead to absurd consequences.[5]

Both contracts are unambiguous and evidence intent to render Janney responsible not only for Adams LLC's services to him personally but also for his companies' debts to Adams LLC.[6] Therefore, Adams LLC established that Janney is liable for both his own and his companies' debts.

## II. Janney Did Not Commit a False Representation or Actual Fraud Within the Meaning of §523(a)(2)(A)

Plaintiff alleges that Janney's debt is nondischargeable under Bankruptcy Code section 523(a)(2)(A) as having arisen not only through the debtor's actual fraud but also as a result of his false representations.

The Fifth Circuit has developed two separate tests for dischargeability claims under §523(a)(2)(A), predicated on which element of the statute the plaintiff is basing its claim. "When defining the elements of nondischargeability, the Fifth Circuit has distinguished between actual fraud on one hand and false pretenses and false representations on the other." *In re Quinlivan*, 347 B.R. 811, 820 (Bankr. E.D. La. 2006), *aff'd,* 2007 WL 1970980 (E.D. La. June 29, 2007). Plaintiff contends that Janney committed both actual fraud and made a false representation when he withheld from it information regarding his corporate and personal debts,

---

[4] La. Civil Code art. 2046.

[5] *Dixie Campers, Inc. v. Vesely Co.*, 398 So.2d 1087, 1089 (La. 1981) ("Although parol evidence is inadmissible to vary the terms of a written contract, La. C.C. art. 2276, when the terms of a written contract are susceptible to more than one interpretation, or there is uncertainty or ambiguity as to its provisions, or the intent of the parties cannot be ascertained from the language employed, parol evidence is admissible to clarify the ambiguity and to show the intention of the parties.")

[6] Plaintiff's exhibits #9 and #10.

3

thereby inducing Adams LLC to continue to provide services to him in the belief that Janney was in better financial condition than he seemed and thus would be able to pay its invoices.

###### A. *Janney's Withholding Financial Information from his Accountant was Not a False Representation*

Plaintiff argues that it relied on Janney to furnish accurate financial information on aspects of Janney's and his businesses' finances to properly perform its duties.[7] Adams LLC contends that it relied on Janney's misstatements of his and his companies' debts and as a result, continued to provide services to the Janney interests for partial or no payment believing that it would be reimbursed when the companies again became solvent.

The Fifth Circuit has held that a debtor's false representation or false pretense falls within 11 U.S.C. §523(a)(2)(A) if it was "(1) [a] knowing and fraudulent falsehood …, (2) describing past or current facts, (3) that [was] relied upon by the other party." *RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1292-93 (5th Cir. 1995) (citing *In re Alison*, 960 F.2d 481, 484-85 (5th Cir. 1992); *In re Bercier*, 934 F.2d 689, 692 (5th Cir. 1991)). But a debtor's silence regarding a material fact also can be a false representation within the meaning of section 523(a)(2)(A). *In re Selenberg*, No. 14-10382, 2015 WL 5579697 at *2 (Bankr. E.D. La. Sept. 21, 2015), *aff'd,* 2016 WL 3034165 (E.D. La. May 27, 2016). *See also In re Acosta,* 2003 WL 23109775 at *14 (E.D. La. Dec. 30, 2003), *aff'd,* 406 F.3d 367 (5th Cir. 2005), *citing Wolstein v. Docteroff (In re Docteroff),* 133 F.3d 210, 216 (3d Cir. 1997); *BBI v. Janney,* ___ B.R. ____ (Bankr. M.D. La. 2016).

Rebecca Adams testified that she did not learn of several of Janney's corporate and personal debts until she reviewed his bankruptcy schedules. She cited specifically debts to

---

[7] Both contracts for accounting services between Janney and Adams LLC required Janney to provide accurate information to the plaintiff.

4

American Pension Consultants for $9,800,[8] Bank of America for $13,950,[9] the Citi credit card claim of $15,921,[10] Zurich North America Credit Collection Services for $2,000,[11] Delta Flex Travelers/Delta Healthcare Providers for $35,000,[12] and a $34,833 debt to Double Diamond Rentals.[13] Adams also testified that Janney had listed several debts in his bankruptcy schedules in amounts greater than her records reflected. In this group she included debts to Cottonport Bank for $73,989,[14] Claude Rivet (a Janney employee) for $25,000,[15] Iberiabank in the amount of $76,000,[16] Fitness Ventures, LLC for $39,000,[17] Michael Cupit for $9,600,[18] and $73,727 owed to New Logic Business Loans.[19]

       The plaintiff contends that by withholding the existence of some liabilities from it and misstating the true value of others, Janney presented a financial picture to plaintiff that materially differed from reality. Adams LLC argues that it relied on this distorted image of Janney's liabilities in deciding to continue to work for Janney and his companies despite not being paid timely as their agreement required.

---

[8] Testimony of Rebecca Adams, Feb. 1, 2016, p. 32, lines 2-3.

[9] Testimony of Rebecca Adams, Feb. 1, 2016, p. 32, lines 21-22.

[10] Testimony of Rebecca Adams, Feb. 1, 2016, p. 33, lines 8-10.

[11] Testimony of Rebecca Adams, Feb. 1, 2016, p. 34, lines 24-25.

[12] Testimony of Rebecca Adams, Feb. 1, 2016, p.34, line 25, through p. 35, line 1.

[13] Testimony of Rebecca Adams, Feb. 1, 2016, p. 35, lines 18-19.

[14] Testimony of Rebecca Adams, Feb. 1, 2016, p. 35, lines 5-6.

[15] Testimony of Rebecca Adams, Feb. 1, 2016, p. 33, line 25, through p. 34, line 1.

[16] Testimony of Rebecca Adams, Feb. 1, 2016, p. 36, lines 13-14.

[17] Testimony of Rebecca Adams, Feb. 1, 2016, p. 36, lines 13-14.

[18] Testimony of Rebecca Adams, Feb. 1, 2016, p. 38, lines 4-6.

[19] Testimony of Rebecca Adams, Feb. 1, 2016, p. 38, lines 22-24.

As the sole shareholder or member of his various enterprises, Janney was responsible for incurring the corporate debts and applying for loans. Janney obviously knew of both his own and his businesses' debts (his listing them in his bankruptcy schedules establishes that); but he offered no evidence to rebut Adams's testimony that he had never before disclosed the debts to her. This evidence satisfies the first two elements of the *RecoverEdge* test. However, in order to prevail, Adams LLC also must establish that it justifiably relied on Janney's misrepresentations.[20]

To prove justifiable reliance, the plaintiff must show the representation was not obviously false and that there were no "red flags" indicating that reliance is unwarranted.[21] The evidence supports a finding and conclusion that Adams did not justifiably rely on Janney's alleged misconduct. Specifically, Rebecca Adams knew by February 2013 that Janney had failed to remit to the Internal Revenue Service payroll taxes he or his companies had withheld from employee's earnings.[22] Adams also testified that cash flow was "tight" in the companies and that even though payroll taxes were being withheld from employees' salaries and "large amounts of cash" were being withdrawn from the company, she did not know where they were going.[23] Both facts should have caused her to question Janney's handling of his and his companies' finances. Despite knowing this, Adams LLC nevertheless chose to extend its contract with Janney and his companies in February 2013 and in less than three months rendered an additional

---

[20] *Field v. Mans*, 516 U.S. 59, 61 (1995).

[21] *In re Mercer*, 246 F.3d 391, 418 (5th Cir. 2001) ("[T]he recipient of a fraudulent misrepresentation may justifiably rely on it *unless* its falsity is obvious or there are '*red flags*' indicating such reliance is unwarranted," citing W. Prosser, LAW OF TORTS §108, p. 718 (4th ed.1971)).

[22] Testimony of Rebecca Adams, February 1, 2016, p. 84, lines 1-4. Janney's failure to remit payroll taxes to the IRS led to a federal tax lien on his personal and business assets.

[23] Testimony of Rebecca Adams, February 1, 2016, p. 84, lines 8-14.

6

$30,000 in services to them.[24] The plaintiff's actions were inconsistent with its claim that the defendant misled it.

Adams's heedlessness is further underscored by her knowledge of the Janney entities' debt to BBI Architectural Services, which the companies hired as architects for a Livingston Parish project. Adams admitted that Janney had not told her about the companies' BBI debt until 2009, about two years after it arose.[25] Once he did disclose the debt to her, he insisted that BBI was owed nothing. In any case, Adams LLC cannot justifiably claim to be misled by Janney's failure promptly to inform it about other debts when it knew that Janney previously had withheld information from it about his businesses' liabilities.

Janney skewed the official financial portrait of himself and his companies by failing to disclose to his accountant numerous debts and, in some cases, not disclosing the correct amount of debts. However, Adams LLC, through its member, Rebecca Adams, knew of enough "red flags" to make its unquestioning reliance on Janney's representations about finances unjustifiable. *See Mercer*, *above*. Accordingly, the plaintiff has failed to establish that Janney made a false representation rendering its claim nondischargeable under Bankruptcy Code §523(a)(2)(A).

> B. *Janney Did Not Commit Actual Fraud When He Withheld Financial Information from His Accountant*

The plaintiff's second claim under 11 U.S.C. §523(a)(2)(A) is that Janney withheld complete information about his and his companies' finances from Adams to induce Adams LLC to continue to provide accounting services on credit to him and his businesses.[26]

---

[24] Plaintiff's exhibit #10; Testimony of Rebecca Adams, February 1, 2016, pp. 113, line 20, through p. 114, line 4.

[25] Testimony of Rebecca Adams, February 1, 2016, p. 80, lines 14-15.

[26] Complaint, ¶30 (P-1).

"Actual fraud, by definition, consists of any deceit, artifice, trick or design involving direct and active operation of the mind, used to circumvent and cheat another—something said, done or omitted with the design of perpetrating what is known to be a cheat or deception." *RecoverEdge*, 44 F.3d at 1293. *See also Husky Int'l Elecs., Inc. v. Ritz,* ___ U.S. ____, 136 S.Ct. 1581, 1586, ___ L.Ed.2d ____, 2016 U.S. LEXIS 3048 (2016) (noting that fraud generally involves deception or trickery while declining to establish a precise definition) and 4 COLLIER ON BANKRUPTCY ¶523.08 (16th ed. 2016).[27]

Plaintiff argues that Janney intentionally withheld information from it to induce it to continue to provide accounting services on credit. Adams testified that Janney fell behind in his payments to her before June 2012[28] but that Janney's misrepresentations led her to believe that Janney's financial condition was better than it appeared, leading her to conclude that she could forebear insisting on payment of her past-due bills until the companies' financial condition improved.[29] Adams's testimony is implausible.

Adams arrived at her conclusion despite having personally prepared a spreadsheet of liabilities reflecting Janney's companies' debt of $2,047,568.36 as of September 30, 2012.[30] The spreadsheet notably omits the companies' debt to plaintiff and so establishes that plaintiff necessarily knew that the Janney entities' debt was even greater than the spread sheet reflected.[31]

---

[27] *RecoverEdge* cited an earlier edition of COLLIER ON BANKRUPTCY, the text of which is virtually identical to that in the sixteenth edition.

[28] Testimony of Rebecca Adams, February 1, 2016, p. 85, lines 14-18.

[29] Testimony of Rebecca Adams, February 1, 2016, pp. 42, line 11, through p. 43, line 4.

[30] Defendant's exhibit #10.

[31] Testimony of Rebecca Adams, February 1, 2016, p. 116, lines 12-17. Adams testified that Janney specifically had asked her not to include the debt to her company on the spreadsheet. She also testified that the debt to her company was not included in the financial statements Janney presented to her in May 2012. Adams further testified that she based her decision to extend credit to Janney and his companies at least in part on those financial statements. (Testimony of Rebecca Adams, February 1, 2016, p. 103, lines 6-12.)

Janney may have given Adams an imperfect description of his debts, but the information plaintiff did possess reflected that Janney and his businesses were in dire financial condition. Plaintiff therefore cannot claim that Janney defrauded it into providing services: Adams knew Janney was not paying her company regularly and knew of the Janney parties' extensive corporate debt.

Nor did Adams LLC offer any evidence supporting a finding that Janney asked it to defer demanding payment for its services to him or his businesses based on his alleged net worth and presumed future ability to pay.

Plaintiff has failed to prove that Janney made false representations or committed actual fraud within the meaning of 11 U.S.C. §523(a)(2)(A).[32]

### III. Adams Failed to Prove that Janney's Discharge Should Be Denied Pursuant to 11 U.S.C. §727(a)(3) and (5)

Adams next argues that Janney should lose his discharge for failing to maintain adequate books and records and because of his inability to explain the loss of assets that could have been used to pay his creditors.

#### A. *Adams LLC Failed to Meet its Burden of Proof to Deny Janney's Discharge for Failure to Maintain Adequate Books and Records*

Plaintiff argues that the court should deny Janney's discharge because he failed to maintain adequate books and records from which his financial condition may be ascertained. 11 U.S.C. §727(a)(3). Specifically, it contends that "[i]t was clearly impossible to ascertain and rely upon the credibility of the Debtor's books and records when Adams, the entity retained to keep

---

[32] The complaint also alleges that Janney withheld complete financial information from Adams so that he could use the inaccurate financial statements she prepared to defraud other creditors. No creditor has appeared in the main case to support claims that it was defrauded based on the false financial statements.

9

and maintain the books and records was itself mislead [sic] by financial information intentionally concealed by Janney."[33]

The Bankruptcy Code commands courts to deny a discharge if "the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case".[34]  Though a debtor's books and records need not be perfect, creditors are "entitled to written evidence of the debtor's financial situation and past transactions"[35] and "records must at least reasonably allow for reconstruction of the debtor's financial condition to meet the requirements of the Code."[36] "The debtor's obligation to present records of financial information is intended to protect the trustee and creditors by enabling them to determine or confirm the debtor's financial condition and the cause of the debtor's financial difficulty.  The records need not be in any particular form; however, they must be sufficient to 'enable his creditors reasonably to ascertain his present financial condition and to follow his business transactions for a reasonable period in the past.'"[37]

---

[33] Plaintiff's Pre-Trial Memorandum, p. 18 (P-35).

[34] 11 U.S.C. §727(a)(3).

[35] *Neary v. Hughes (In re Hughes)*, 353 B.R. 486, 501 (Bankr. N.D. Tex. 2006) (citing *In re Grisham*, 245 B.R. 65, 77 (Bankr. N.D. Tex. 2000).  *See also In re Womble*, 289 B.R. 836, 856 (Bankr. N.D. Tex. 2003) ("Creditors are entitled to written evidence of the debtor's financial situation and past transactions….") and *Cadle Co. v. Duncan (In re Duncan)*, 562 F.3d 688, 697 (5th Cir. 2009) (citing *Womble*); *Martin Marietta Materials Southwest, Inc. v. Lee (In re Robert E. Lee)*, 309 B.R. 468, 478, (Bankr. W.D. Tex. 2004) (internal citations omitted) (noting court's "wide discretion" in making the determination).

[36] *In re Dias*, 95 B.R. 419, 422 (Bankr. N.D. Tex. 1988).

[37] 4 COLLIER ON BANKRUPTCY ¶727.03[3][a] (16th ed. 2016) (citing *Mercantile Peninsula Bank v. French (In re French)*, 499 F.3d 345 (4th Cir. 2007)).

The plaintiff bears the initial burden of proving that Janney failed to keep and preserve records and that his failure prevented it from ascertaining his true financial condition.[38]

Adams claims she did not know about several of Janney's personal and corporate debts[39] or the actual amounts of others.[40] The crux of Adams LLC's argument is that none of Janney's or his businesses' books and records are reliable because plaintiff was responsible for creating and maintaining them and they necessarily were inaccurate because Janney gave the plaintiff, his own accountant, inaccurate information to prepare the books and records.

The evidence does not support a finding that Janney's discharge should be denied pursuant to §727(a)(3). Janney did not rely solely on the books and records plaintiff maintained to prepare his bankruptcy schedules. The defendant testified that he spent "hours and hours" telephoning creditors to obtain accurate information about his debts.[41] Moreover, the Janneys disclosed information to their chapter 7 trustee that plaintiff had not known about.[42]

No evidence supports a finding that any of the information Janney provided in his bankruptcy filings was incomplete or inaccurate. Discrepancies between the schedules and statements Janney filed in his bankruptcy case and information in his own and his companies' records do not on this record support a finding that Janney failed to maintain adequate

---

[38] *Robertson v. Dennis (In re Dennis)*, 330 F.3d 696, 703 (5th Cir. 2003); *Grant v. Sadler (In re Sadler)*, 282 B.R. 254, 263 (Bankr. M.D. Fla. 2002).

[39] See notes 2-7, *supra.*

[40] See notes 8-13, *supra.*

[41] Testimony of Todd Janney, Feb. 1, 2016, p. 206, lines 12-25.

[42] For example, Todd Janney's mother's cash withdrawals totaling $67,825 from Physicians' Choice Physical Therapy WBR, LLC in May and June 2013.

information justifying loss of his discharge, especially where the plaintiff helped prepare and maintain the very records it contends were inadequate.[43]

"Because the purpose of Chapter 7 of the Code is to give honest debtors a 'fresh start' via the discharge, the provisions of section 727(a) are to be liberally construed in favor of debtors, and strictly construed against the party objecting to discharge. Courts should deny discharge only for very specific and serious infractions." *Martin Marietta Materials Southwest, Inc. v. Lee (In re Robert E. Lee)*, 309 B.R. 468, 476 (Bankr. W.D. Tex. 2004). *Accord, In re Ichinose*, 946 F.2d 1169, 1172 (5th Cir. 1991) (Only "specific and serious infractions" warrant denial of a discharge); *In re Jones*, 292 B.R. 555, 559 (Bankr. E.D. Tex. 2003) ("11 U.S.C. § 727 is to be construed liberally in favor of the debtor and strictly against the creditor in furtherance of the 'fresh start' policy"); *In re Reed*, 11 B.R. 683, 685 (Bankr. N.D. Tex. 1981) ("In order that effect may be given to the 'fresh start' notion, the provisions of § 727(a) relating to discharge must be liberally construed in favor of the debtors.")

Adams found the discrepancies between the debtor's and his companies' books and records and Janney's bankruptcy schedules because of the disclosures on the schedules. Adams never testified that she knew Janney had debt or assets he didn't disclose on his schedules: instead, she testified at length about debt *she* didn't know he had, all of which he *did* disclose on his schedules. Plaintiff cannot credibly claim that parties in interest cannot rely on defendant's disclosures or determine his financial condition from his schedules. Adams LLC has established only that Janney withheld information from his accountant before filing bankruptcy, which is not a basis for denying Janney's discharge.

---

[43] Worth noting also is that the chapter 7 trustee did not sue to prevent Janney's discharge on any ground, including alleged failure to maintain adequate books and records. *See In re Dennis*, 330 F. 3d. 696, 703 (5th Cir. 2003) (noting in *dictum* partial support of its ruling that the chapter 7 trustee had not objected to adequacy of the debtor's financial disclosures.)

Adams LLC relies on the Fifth Circuit's ruling in *Graham Mortgage Company v. Goff*,[44] where a creditor sued to deny the discharge of a defaulting borrower who ran a "complex network of limited partnerships."[45]  The creditor in *Goff* prevailed after two experts were unable to reconstruct the debtor's financial transactions over a period of several years or to account for nearly $15 million in assets.  But *Goff* is distinguishable because that plaintiff specifically identified missing documentation that would have allowed its experts to trace the debtor's assets.  Adams LLC has not established that any Janney documentation is missing nor has it proven that anyone has been unable to determine Janney's true financial condition from his schedules and statements.

Accordingly, Adams LLC has failed to meet its burden for denial of discharge under 11 U.S.C. §727(a)(3).

### B.    *Adams Failed to Prove that Janney Cannot Adequately Explain the Loss of His Personal Assets*

#### i.    **Janney did not Transfer any of his own Assets Prepetition**

The Bankruptcy Code also commands courts to deny the discharge if "the debtor has failed to explain satisfactorily…any loss of assets or deficiency of assets to meet the debtor's liabilities."[46]  Plaintiff again bears the initial burden of showing that the debtor's assets are missing and that the debtor has not adequately explained their absence.[47]

---

[44] *Graham Mortg. Co. v. Goff (In re Goff)*, 579 Fed. Appx. 240 (5th Cir. 2014).

[45] *Id.* at 242.

[46] 11 U.S.C. §727(a)(5).

[47] "Once the objector has introduced some evidence of the disappearance of substantial assets or of unusual transactions, the debtor must satisfactorily explain what happened." *Bell v. Claybrook (In re Claybrook)*, 385 B.R. 842, 852-853 (Bankr. E.D. Tex. 2008).  *See also First Texas Sav. Ass'n v. Reed (In re Reed)*, 700 F.2d 986, 992-993 (5th Cir. 1983) ("While the burden of persuasion rests at all times on the creditor objecting to discharge, it is axiomatic that the debtor cannot prevail if he fails to offer credible evidence after the creditor makes a *prima facie* case.  The creditor's burden of persuasion does not obviate the necessity that the debtor provide a satisfactory explanation of the loss of his assets.")

Adams LLC maintains that Janney is not entitled to a discharge because he cannot adequately explain his transfer to his mother of assets belonging to two of his corporate entities. Its claim relates to Janney's 2013 "Sales Agreement" that transferred the Walker, Plaquemines and Addis locations of Physicians' Choice Physical Therapy, LLC to his mother for $76,000 in satisfaction of allegedly pre-existing debt.[48] The transfer comprised "all equipment, furniture, computers, electronics, fixtures and supplies" at the three locations as well as the "assets, patient load and accounts receivable."[49]

On its face, the document does not purport to transfer any of Janney's personal assets; rather, it transfers property of entities that Janney owns. Adams LLC claims, however, that Janney and his corporate entities were one and the same and insists that that Janney and his companies should be treated as a single entity through reverse veil piercing. The plaintiff has no standing to pursue that claim.

### ii. Adams LLC Lacks Standing to Sue to Pierce the Company Veil

Adams LLC's claim fails because the evidence established that before filing bankruptcy, Janney transferred assets that belonged to his businesses, not to him. Because those entities are juridical persons, their assets were not available to pay Janney's creditors and so their prepetition transfers don't fall within 11 U.S.C. §727(a)(5).

Corporations are legal entities distinct from their stockholders.[50] "Protection from individual liability encourages and promotes business…and industry…. Additionally, this shareholder liability shield encourages business investments in high-risk areas by enabling investors who

---

[48] Sales Agreement for Purchase of Business Operations of Physicians' Choice Physical Therapy, LLC, p. 1. (Plaintiff's exhibit #8.)

[49] *Id.*

[50] *Riggins v. Dixie Shoring Co., Inc.*, 590 So.2d 1164, 1167-68 (La. 1991).

14

utilize the corporate form to make capital contributions to corporations while insulating their personal wealth from the risks inherent in business."[51] Louisiana courts have been reluctant to pierce the company veil absent exceptional circumstances.[52]

Alter ego claims belong to the bankruptcy estate[53] and therefore the trustee alone has standing to prosecute them, at least in the first instance. "A creditor may be able to seek a judicial declaration that corporate entities constitute the alter egos of the debtor, but only in certain circumstances. To pursue an alter ego claim, a creditor must establish: (1) the claim must be colorable; (2) the claim must be brought on behalf of the estate; and (3) the Trustee must have unjustifiably refused to pursue the claim."[54] According to *Packer*, "[i]f the creditor shows that these conditions are met, then the bankruptcy court may, in its discretion and after considering the benefit to the estate, grant the creditor leave to purse the claim on behalf of the estate."[55]

The plaintiff here makes claims on its own behalf and not on behalf of the estate. It hasn't proven that the chapter 7 trustee unjustifiably refused to pursue the claim. Thus, Adams LLC has not established its standing to pursue a veil piercing action against Janney.

---

[51] *Id. See also Smith v. Cotton's Fleet Service, Inc.*, 500 So.2d 759 (La. 1987) and *Glazer v. Commission on Ethics/or Public Employees*, 431 So.2d 752 (La. 1983).

[52] *Sevenhills Healthcare, LLC v. St. James Behavioral Health Hosps.*, 2016 La. App. Unpub. LEXIS 175, *8 (La. App. 1st Cir. 05/05/16) quoting *Riggins* ("Because of the beneficial role of the corporate concept, the limited liability attendant to corporate ownership should be disregarded only in exceptional circumstances.") "[T]he same policy considerations relevant to a determination of piercing the veil of a corporation also apply to a limited liability company." *Charming Charlie, Inc. v. Perkins Rowe Assocs., L.L.C.,* 97 So.3d 595, 597 (La. App. 1st Cir. 2012).

[53] *In re S.I. Acquisition, Inc.*, 817 F.2d 1142, 1153 (5th Cir. Tex. 1987) (holding that a creditor's state court alter ego action was subject to the automatic stay because the cause of action was property of the defendant's bankruptcy estate).

[54] *Judgment Factors, LLC v. Athol Packer (In re Packer)*, 816 F.3d 87, 92 (5th Cir. 2016) citing *La. World Exposition, Inc. v. Fed. Ins. Co. (In re La. World Exposition, Inc.)*, 832 F.2d 1391, 1397 (5th Cir. 1987).

[55] *Id*. at 92.

Plaintiff relies on *JNS Aviation, Inc. v. Nick Corp.* for its standing to bring the reverse piercing action.[56] The *JNS Aviation* court relied on *Gibraltar Savings v. LD Brinkman Corp.*[57] to hold that any creditor may take up the mantle when the trustee abandons a reverse piercing claim. However, *Gibraltar* is distinguishable because the court specifically noted that plaintiff had sought and obtained the bankruptcy court's leave to prosecute the action.[58] The Fifth Circuit has made plain that creditors must obtain leave of the bankruptcy court to assert veil-piercing claims that belong to bankruptcy estates. *See e.g. Collins v. Ebert (In re Maranatha Const. Co.)*, 559 Fed. Appx. 415, 419 (5th Cir. 2014) ("In *JNS Aviation*, the trustee chose not to pursue the disputed action, leaving the presiding court with discretion to allow individual creditors to proceed with associated claims"); and *Packer*, 816 F. 3d at 92 ("If the creditor shows that these conditions are met, then the bankruptcy court may, in its discretion and after considering the benefit to the estate, grant the creditor leave to purse the claim on behalf of the estate.") Adams LLC did not establish that it had even sought leave to sue from the trustee, much less leave of court.

Because Adams LLC did not obtain leave to sue Janney on this theory, Adams LLC cannot prevail on its claim that Janney has failed to explain satisfactorily the loss of assets or deficiency of assets to meet his liabilities. Therefore, Adams LLC's effort to deny Janney's discharge under 11 U.S.C. §727(a)(5) fails.

---

[56] 418 B.R. 898 (N.D. Tex. 2009).

[57] 860 F.2d 1275 (5th Cir. 1988).

[58] *Id.* at 1285.

## CONCLUSION

Plaintiff, Adams LLC, failed to carry its burden of proving that Janney's obligation to it should be excepted from discharge on the basis of false representations or actual fraud within the meaning of 11 U.S.C. §523(a)(2)(A). Adams LLC's reliance on Janney was not justifiable given the "red flags," or indications of irregularity, the plaintiff knew through its business relationship with Janney.

Adams LLC also did not prove that Janney failed to maintain adequate books and records to justify denying his discharge under 11 U.S.C. §727(a)(3).

Finally, the plaintiff failed to prove that any assets Janney transferred prepetition and cannot account for actually belonged to Janney. Rather, the evidence established that the assets belonged to Janney's businesses and thus were not available to satisfy his liabilities, given plaintiff's inability to pierce the veil of the business entities and hold Janney liable for its debt. Accordingly, plaintiff has not met its burden to mandate denial of Janney's discharge under 11 U.S.C. §727(a)(5).

Baton Rouge, Louisiana, September 29, 2016.

**s/ Douglas D. Dodd**
DOUGLAS D. DODD
UNITED STATES BANKRUPTCY JUDGE